## M. A. FABRE *v.* WILLIAM T. HEPP.

APPEAL from the Third District Court of New Orleans, *Kennedy, J. Julien Seghers* and *L. Janin*, for plaintiff. *L. Pierce, C. Roselius* and *G.*

*Schmidt*, for defendant. The opinion of the court (*Eustis*, C. J., absent, and *Slidell*, J., dissenting,) was pronounced by

ROST, J. This is an action of mortgage, in the case of the *Bank of Louisiana* v. *Delery et al.*, 2d Ann. 648. The third opposition of the plaintiff in the present suit was dismissed, and he was left to his recourse in a direct action. We then held, that the probate sale made to affect a partition of the property, composing the community, which had existed between *Sylvain Peyroux* and the plaintiff's mother, could not be set aside, unless the parties interested were made parties to the proceedings.

The plaintiff, subsequently, instituted an action of nullity against *Sylvain Peyroux* and his minor children, and obtained a judgment annulling three decrees of the court of probates, to wit: 1st. The decree appointing *Sylvain Peyroux*, as tutor of the plaintiff. 2d. The decree ordering the sale of the community property. 3dly. The decree homologating the account filed by *Sylvain Peyroux*, as tutor of the plaintiff, on the 1st April, 1846. The same judgment adjudged the defendant, *Peyroux*, to pay the plaintiff $24,539 04½, with legal interest and mortgage.

This judgment is not conclusive upon the defendant, who being a party in interest, had no notice of the proceedings, and no opportunity to defend his rights. The plaintiff, taking this view of the law, has supported his judgment of revocation, by introducing in this suit the evidence upon which it was obtained; and we concur with the district judge, that he has satisfactorily proved the reality and amount of his claim, and that the appointment of *Peyroux*, as his tutor, and *Castilloro*, as his under-tutor, and all the family meetings held for his benefit, were null and void; but it does not follow, that the probate sale is also null and void for the same reasons. The plaintiff shows, for the first time in this suit, that he has renounced the community; he can, therefore, exercise no right as joint owner of a portion of it; he bases his action, exclusively, upon the ground that he is a mortgage creditor, and the nullities alleged, are not such as can avail creditors. As we said in the former case, they can be taken advantage of by the heir alone, in his capacity of heir, and may be cured by his ratification, expressed or implied, after he becomes of age. We consider that the renunciation of the plaintiff to the community, after he became of age, rendered the judicial sale of the community property valid. The renunciation of a community by the heir of the wife, has, like that of a succession, a retrospective effect; the heir of the wife who renounces the community, is considered as never having had any interest in it, and his portion belongs to the surviving partner in community, by force of his original title, *jure non decrescendi*. Pothier, traité de la Communauté, No. 568, 572, 578. Delvancourt, Leo. 4, tit. 1. *Des contrât du marriage*, sec. 5. Des suites de la dissolution du la communauté, p. 1. Note 2, page 28, (page 46, notes.)

The plaintiff never having had any right in the community, the surviving partner in his own right, and also as recipient of the share renounced, and as tutor of his minor children, had capacity to administer and sell the property of the community, so long as creditors did not object. See the case of *Bryan* v. *Atchison*, 2d Ann. 463.

This sale, however, has been annulled as fraudulent, contradictorily with *Sylvain Peyroux*; the judgment annulling it, has not been appealed from, and is conclusive against him, and all parties to the fraud it perpetrated. The participation of *McCarthy* and *Barrett*, and their combination with *Sylvain Peyroux*, to defraud

the plaintiff and *Peyroux's* own children, are clearly shown; but there is not in the record sufficient evidence to impeach the good faith of *Delery*, so far as the slave, in controversy, is concerned. It has been urged, in argument, that after the sale to him by *Barrett*, this slave, and all the other property conveyed, remained in the possession of *Peyroux*; that fact was susceptible of direct proof, and should not have been suffered to rest on remote inferences. The defendant, under his purchase from the bank, has required *Delery's* title, cannot be affected by the frauds of the purchasers at probate sale, and of the party to whom they sold. The only question, therefore, which the case presents, is, whether the legal mortgage existing in favor of the plaintiff on the community property, was entirely extinguished by the probate sale.

In the case of *Sarapure* v. *Debuys*, 6 N. S. 19, it was held, that a succession sale of the property of the husband, by virtue of an order of the court of probates, extinguishes all mortgages in favor of his heirs. But that a sale of the property of the surviving wife, made under the same order, does not produce that effect. In the case of *Goice* v. *Poydras*, 6 L. R. 283, it was decided that all mortgages created by the deceased, on his own property, were extinguished by a sale made under an order of the court of probates. We are not aware that the rule has ever been carried further, and, in a late case, we recognized the analogous principle, that where common property was sold to effect a partition, and purchased by a party having previously no interest in it, the legal mortgage existing upon it against one of the joint owners, continued in force.

The probate sale, in this case, was made in the succession of *Mrs. Peyroux*, and so far as the property sold was hers, there is no doubt that the mortgage existing in favor of the plaintiff was extinguished, but *Sylvian Peyroux* owned one-half of the property in his own right, and after the renunciation of the plaintiff to the community, he must be considered as the owner of one-sixth of the other half from the death of his wife. Those seven-twelfths formed no part of the succession, and if the plaintiff had a legal mortgage on the property of *Sylvain Peyroux*, under the authority of the case of *Sarapure* v. *Debuys*, the sale of *Peyroux's* share of the community, under the order of the court of probates, left it in full force.

Had the plaintiff a legal mortgage on the property of *Sylvain Peyroux*, and, if so, from what date?

It is true, that by marrying the plaintiff's mother, he became the co-tutor of the minor in 1828, but as the tutrix was authorized by the judge, on the advice of a family meeting, to retain the tutorship, no mortgage attached on his property; he became bound, *in solido* with his wife, for her faithful administration during the marriage, but the obligation was purely personal. 1 Delvancourt, notes to page 107.

In September, 1841, *Peyroux* caused himself to be appointed dative tutor of the plaintiff; on the 16th of that month, he took the oath and entered upon the discharge of the duties of tutor. It has been shown, that this appointment was illegal, and that he never gave bond; but this cannot prevent the legal mortgage in favor of the plaintiff from taking effect. ' Whether *Peyroux* was tutor, or acted as such without authority, the rule is the same. The mortgage took effect on the 16th of September, 1841, at latest, and is to continue to the settlement of the final account of the tutor. Civil Code, 3282, 3283. 2 Troplong Hyp., No. 428.

FABRE
*v.*
HEPP.

The entire amount claimed by the plaintiff, came to the possession of his mother after her second marriage. *Peyroux* was therefore bound, *in solido* with her, to account for it, being the debtor of the plaintiff at the time he commenced to act as his tutor; a legal mortgage attached to his property for the amount due.

It is urged, that the receipt of *Peyroux* to *Canterelle*, dated the 16th May, 1842, for $20,000, inherited by the plaintiff from his grand-mother, should have been excluded, on the ground that it is *res inter alios acta*, and further, because it was executed after the judicial sale of the property, under which judicial sale, and by mesne conveyances, the defendant claims title.

The grand-mother of the plaintiff died in 1839; the account of the administration of her succession, fixing the share of the plaintiff at the sum of $20,000, was homologated on the 11th of November of that year. This was during the lifetime of *Mrs. Peyroux;* the receipt given after her death by *Peyroux,* was admissible to prove, that the amount, shown by other evidence to be due to the plaintiff, had been received, and as the mortgage against *Peyroux* takes date from the time he commenced to act as tutor, if not from the day of his appointment, the date of the receipt is not material; the presumption is, that the money was received long before it was given.

It is urged, that *Peyroux*, acting as tutor, has released the mortgage given by *McCarthy*, the purchaser at probate sale, and that, as to third persons, the release is valid, though the money was not paid. *Kemp, tutrix,* v. *Rocoley et al.*, 2d Ann. 316.

Conceding that *Peyroux* might have raised that mortgage, so far as the succession of his wife was concerned, it is hardly necessary to say, that he could not then defeat a legal mortgage created, after the death of his wife, against himself individually, and that the plea that he has done so, is totally inadmissible as a defence. It is not shown, however, that he has attempted to raise that mortgage.

We are of opinion that the plaintiff has a mortgage on seven-twelfths of the property in controversy.

It is therefore ordered, that the judgment in this case be reversed. It is further ordered, that seven-twelfths of the slave *Crawford* be seized and sold under the plaintiff's mortgage, and that the proceeds of the sale, after deducting costs, be paid over to the plaintiff and credited on his judgment against *Sylvain Peyroux*. It is further ordered, that between the defendant and the warrantors, the case be remanded to await the sale of the slave under this decree, and then for further proceedings according to law ; the costs of this portion of the appeal to be paid by the warrantors.

<hr />

## SAME CASE—ON A RE-HEARING.

Where the surviving husband by a second marriage, under an order of court in pursuance of a family meeting, sells the community property, which, by subsequent conveyances, gets into the hands of an innocent purchaser, the property thus sold will be freed from the mortgage in favor of the minor by the first marriage of the deceased, of which the husband was co-tutor, although the order of sale was illegally granted, and was subsequently annulled at the suit of the minor; the cause of nullity being relative merely.

THE judgment of the court was pronounced by

SLIDELL, J. The question in this cause is, whether *Fabre* has a right of legal mortgage upon a slave owned and possessed by the defendant.

The facts material to this inquiry are the following: The plaintiff's mother married *Sylvain Peyroux.* This slave formed part of the community of acquets and gains which existed between *Peyroux* and his wife. She died, leaving children, issue of her marriage with *Peyroux.* He was confirmed by the Court of Probates of St. Bernard, the domicil of the plaintiff and of *Peyroux,* and the place where her succession was opened, as natural tutor of those children, and was also, upon the advice of a family meeting, appointed dative tutor of the plaintiff, who was then a minor, and continued to live in that parish until the year 1843, when he went to France. He became of age sometime in 1843 or 1844. An inventory of the community property of *Peyroux* and wife was made, and, in 1841, *Peyroux,* as tutor of his children, and dative tutor of *Fabre,* presented a petition to the court of probates of said parish of St. Bernard, praying an order for a family meeting to deliberate on the propriety of selling their interest in the community property. The family meeting declared that, in their opinions, a partition in kind could not be made without great injury to the minors, and that a partition, by sale at auction, would be advantageous to them, and they recommended that the share of the minors be sold on certain designated terms of credit. *Peyroux* then, in his capacity of tutor and dative tutor, presented the deliberations of the family meeting to the Court of Probates of St. Bernard, and represented in his petition, that it was for their interest that their property should be all sold, and he accordingly prayed for such order of sale as might be proper, in order that the sale might be effected according to the advice of the family meeting. Upon this petition the court made a decree, ordering, not that the mere interest of the minors be sold, but the entire property. The words of the decree are: Let the deliberations of the family meeting be approved and homologated, and let the property belonging to the community heretofore existing between the petitioner and *Rose Aglac Canterelle,* his disceased wife, be sold. In pursuance of this decree, the entire community property, and not the mere interest of the minors, was sold at public auction in 1841, by the same parish judge who made the decree, he acting in his capacity of auctioneer *ex officio.* The entire property of the slave in question was adjudicated, with other community property, to *McCarthy. McCarthy* afterwards sold the slave to *Barrett; Barrett* sold to *Delery.* The mortgage notes for the price given by *Delery* were discounted by the Bank of Louisiana. The bank subsequently caused the slave to be seized and sold under the mortgage, became itself the purchaser at sheriff's sale, and then sold to *Hepp,* the defendant. Whatever fraud and collusion may have existed between *Peyroux, Barrett,* or other antecedent parties, the good faith of the bank and of *Hepp* is unquestioned.

Thus, it appears, that the same judgment which authorized the sale of the interest of *Mrs. Peyroux's* succession in the community property, contemplated and authorized the simultaneous sale of *Peyroux's* interest. The whole was ordered to be sold, and was sold undivided. That decree was made by a court which had jurisdiction over the person and estate of the minor *Fabre,* at the instance of the dative tutor of the minor. It is manifestly inconsistent with that decree, that the minor's mortgage, supposing it had then attached on *Peyroux's* share, should continue after the sale on any portion of the community property. To permit it so to continue, would be to permit the decree of the court to be a snare to the public.

FABRE
*v.*
HEPP.

Then the interest of *Peyroux*, as well as that of the succession of *Mrs. Peyroux*, having been sold in mass, in pursuance of a decree, which necessarily released the legal mortgage; and that decree having been rendered by a court clothed with jurisdiction over the person and rights of the minor, third persons holding in good faith, under that decree, are protected by it. Now the bank and the purchaser stand in that attitude; and even if the original purchaser, *McCarthy*, and some of the other parties to the intermediate conveyances were colluded with *Peyroux*, and would, therefore, have been subject to an equity in favor of the minor, yet that equity being secret, could not affect either the bank or the defendant, who holds under the bank.

So as to the objections to the appointment of *Peyroux*, as dative tutor of the minor, on the ground that the minor children of *Peyroux*, whom he represented as their natural tutor, and *Peyroux*, himself, as debtor of the petitioner, had interests adverse to the plaintiff; as these were, at most, relative nullities, and the appointment was not absolutely void, third persons are not thereby affected.

This case seems properly to come under the doctrines enunciated in *Lallanes' Heirs* v. *Moreau*, 13 L. R. 436. *Bach* v. *Abbott*, 6th Ann. 809. *Stockton* v. *Craddick*, 4th Ann. 282. *Pike* v. *Monget*, 4th Ann. 227.

The above are the considerations which induced me to dissent from the opinion hitherto given by the majority of the court in this case

I think the judgment of the district court should be affirmed.

It is therefore now decreed, that the judgment heretofore rendered in this cause by this court, on the 6th June, 1850, be set aside, and that the judgment of the district court be affirmed; the appellant to pay the costs of the appeal.

EUSTIS, C. J. and PRESTON, J., concurring.

ROST, J., dissenting. I adhere to the opinion first delivered in this case. I do not understand how the order of the judge to sell the interest of *Peyroux* in the slave, with that of his late wife, on his application as tutor, can bring his share under rules exclusively applicable to succession property; or how the decree and sale, under it, were inconsistent with the mortgage of the plaintiff, and necessarily raised it. If it did, then all decrees in actions of partition and sales under them, also necessarily raise the mortgages existing against any of the joint owners.

The fears entertained of the consequences which would flow from the enforcement of such a mortgage, are, in my opinion, imaginary. The question, under consideration, first came before the Supreme Court in 1827, in the case of *Sarapure* v. *Debuys*, 6 N. S. 19. It was then, for the first time, held, that a sale of property made by virtue of an order of the court of probates, extinguishes all mortgages in favor of the heirs of the deceased, whose property is thus sold; but that a sale, by virtue of such order, of the property of a person living, produces no such effect. A quarter of a century elapsed before this exception to the rule was again invoked, and there is no reason to believe that it will be so more frequently hereafter. The principle of the decision itself, did not receive, at the time, the assent of the bar, and has been acquiesced in, mainly on the ground of expediency. I am unwilling to overrule the exception in that case, and to extend the principle of the decision to the property of persons living at the time of the sale.